Cecil **MCMURTRY**, Plaintiff–
Appellant,

v.

The **PAUL REVERE LIFE
INSURANCE CO.**, De-
fendant–Appellee.

No. 01–6579.

United States Court of Appeals,
Sixth Circuit.

May 28, 2003.

Before SUHRHEINRICH and GILMAN, Circuit Judges; and CARR, District Judge.*

PER CURIAM.

Plaintiff Cecil McMurtry appeals from the order of the district court granting summary judgment to Defendant The Paul Revere Life Insurance Co. as to McMurtry's estoppel claim in this ERISA action. Because the issues raised in this appeal following remand are beyond the scope of our previous mandate and are contrary to the law of the case, the judgment of the district court is **AFFIRMED**.

* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

1. The legal and factual background are set forth in this court's decision on the appeal

## I.

This case arises out of a disability insurance policy issued to McMurtry, a physician, by Paul Revere.[1] Under the policy, an insured is entitled to total disability benefits if he is unable to perform the "important duties" of his "regular occupation," is not engaged "in any gainful occupation," and is "under the regular and personal care of a Physician." The policy also provides that an insured is entitled to lifetime total disability benefits if the total disability is due to "injury." If the disability is due to "sickness," the benefits end at age 65. Residual disability benefits are generally not paid beyond age 65, and proof of loss of income is necessary to recover these benefits.

In 1989, McMurtry purchased a "rider" to his disability insurance policy. The rider to the policy redefines "total disability" as simply that the insured is "unable to perform the important duties of your regular occupation," and that the insured is "under the regular and personal care of a Physician." Thus, the rider had the effect of amending the basic policy's definition of "total disability" to eliminate the basic policy's "[n]o other gainful occupation" limitation. The basic policy defined the "maximum benefit period" as "the longest period of time We will pay benefits during any continuous period of Disability. It is shown on the Policy Schedule." The rider also contained a temporal limitation, stating that the rider would end "[w]hen the Policy ends; or [o]n the first premium due date after Your 65th birthday: whichever happens first." Thus, the rider permitted McMurtry to work at some "other gainful occupation" and still collect total disability

from the order granting summary judgment to McMurtry, *McMurtry v. Paul Revere Ins. Co.*, Nos. 98–6090, 98–6269, 2000 WL 799342 (6th Cir. June 12, 2000).

benefits until he turned 65 or until the underlying basic policy ended.

McMurtry's second amended complaint sought past and future benefits, pursuant to 29 U.S.C. § 1132(a)(1)(B); injunctive relief against Paul Revere, pursuant to 29 U.S.C. § 1132(a)(3); estoppel, pursuant to 29 U.S.C. § 1132(a)(3)(B); and attorney fees, pursuant to 29 U.S.C. § 1132(g)(1). In its original ruling, the district court granted McMurtry's motion for summary judgment and denied Paul Revere's. The district court held that McMurtry was entitled to lifetime total disability benefits, attorney fees, and prejudgment interest. Specifically, the district court held that despite McMurtry's continued employment as a physician, after a disabling injury and after he turned 65, he was entitled, under the rider, to "total disability" benefits for life.

Both parties appealed. Significantly, McMurtry raised the estoppel issue. (Brief of Plaintiff–Appellee/Cross–Appellant Cecil McMurtry, M.D., pp. 2–7, 41).

On appeal and cross-appeal we held that McMurtry was entitled to total disability benefits prior to his 65th birthday, but that he was not entitled to lifetime total disability benefits awarded by the district court because he did not meet the definition of total disability as provided in the controlling policy language. We reasoned that "[w]hen the rider, with its modified definition of 'total disability,' expired upon the plaintiff's 65th birthday, the original definition of 'total disability' was reinstated requiring the plaintiff to meet the 'original,' stricter definition of 'total disability.'" Thus, under the definition of "total disability" in the original policy, no longer subject to the rider, an insured may not be "engaged in any other gainful occupation." Since McMurtry admittedly continued to work as a physician, he was clearly engaged in a form of "gainful occupation."

We therefore held that he was not entitled to total disability benefits under the plain language of the policy, and reversed the district court's order granting benefits to McMurtry beyond age 65.

We further held that McMurtry was entitled to attorney fees, but only to the extent that he "prevailed" in establishing his entitlement to total disability benefits prior to his 65th birthday. We remanded to the district court "for a decision whether, given our disposition of the issues on appeal, it is the plaintiff or the defendant who has 'prevailed.'" Lastly, we held that the district court did not abuse its discretion in setting the prejudgment interest rate at 5.413%, the federal statutory postjudgment rate.

McMurtry petitioned for rehearing, raising the estoppel issue. (Petition for Panel Rehearing of Plaintiff–Appellee/Cross–Appellant Cecil McMurtry, M.D., pp. 11–13). Specifically, McMurtry asserted that "[t]he Court's opinion limits the remand to 'a redetermination of the attorney's fee question in a manner consistent with this opinion.'" The panel denied the petition.

Following the issuance of our mandate, the district court remarked that "[o]n remand from the Sixth Circuit Court of Appeals, this Court now faces a number of issues: (1) whether Plaintiff was a prevailing party and is entitled to attorney's fees under ERISA; and (2) whether Plaintiff may proceed with his estoppel claim." Memorandum Opinion dated April 9, 2001, at 1. Before turning to an analysis of the issues presented on remand, the district court stated:

> [T]he Court will briefly summarize its understanding of the current procedural posture. During the trial proceedings this Court addressed Plaintiff's ERISA claims. The Court made two principle findings: (1) that Defendant had an insufficient basis for terminating Plain-

tiff's total disability benefits based upon finding that his current job duties overlap those of his prior job; and (2) that the definition of total disability was fixed by contract after Plaintiff turned 65. Because these findings resolved the case, the Court did not consider Plaintiff's theory of estoppel. The Sixth Circuit left unchanged Plaintiff's first finding, but disagreed with the second. Therefore, under the law of this case, Plaintiff is entitled to total disability benefits to age 65, which amounts to $110,000, plus interest at the rate of 5.43 percent and attorney's fees, if applicable. However, Plaintiff is not entitled to total disability benefits since he turned age 65 and so long as he remains gainfully employed.

*Id.* at 1–2. In that decision, the district court ultimately determined McMurtry was a prevailing party "entitled to reimbursement of 40 percent of his requested fees, or $23,683." *Id.* at 4–5.

The district court did not address the estoppel issue in its April 9 decision. However, the court noted that

the parties dispute whether Plaintiff is entitled to pursue his estoppel claim. The Court has not considered that claim and if the Sixth Circuit did so, it remained very quiet about it. Nevertheless, the Sixth Circuit's opinion may have very negative implications for that claim. The Court would prefer to discuss this issue with counsel to determine whether the estoppel claim remains viable. The Court will set a conference for that purpose.

*Id.* at 5. The district court conducted that conference on May 8, 2001, and ordered the parties to file respective dispositive motions as to the estoppel claim. In his motion, McMurtry claimed that he relied to his detriment on representations made by Paul Revere's agent, Steve Botts, that the disability policy McMurtry purchased provided lifetime disability benefits if he became totally disabled in his occupation as an emergency room physician as a result of injury. McMurtry alleged that "[h]ad I been informed that the own occupation definition of total disability no longer applied after age sixty-five during a continuous period of disability beginning before age sixty-five, I would not have purchased the Paul Revere policy."

On November 8, 2001, the district court entered its decision on the estoppel claim. *See* Memorandum Opinion dated November 8, 2001. The district court stated at the outset that "[w]hile the parties argued the [estoppel] issue on appeal, the Sixth Circuit made no direct mention of it. Therefore, this Court does not consider the claim resolved as yet." *Id.* at 1. The district court indicated that *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir.1998) (en banc), provided the appropriate guidance for resolving the issue raised. *Sprague* held that equitable estoppel principles "cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague*, 133 F.3d at 404 (in the context of welfare benefit plans).

The district court concluded that a promissory estoppel claim was not available to McMurtry for two reasons. First, it reasoned that:

In several places throughout its opinion, the Sixth Circuit concluded that the Policy definitions were clear and unambiguous and that under any standard the plain language of the Policy did not entitle Plaintiff to total disability benefits after age 65. Specifically, the Sixth Circuit stated, "It is not disputed that the plaintiff continues to work as a physician, and therefore is clearly engaged in a form of 'gainful occupation.' He is,

therefore, not entitled to total disability benefits under the plain language of the policy." What this Court saw differently than the Sixth Circuit has now made the law of this case. This Court must give that conclusion its full deference. After thoroughly reviewing the underlying Sixth Circuit opinion, this Court concludes that the Sixth Circuit has found that the operative substantive provisions of the Policy are clear and unambiguous as to Plaintiff. Consequently, under *Sprague,* Plaintiff cannot assert a claim for promissory estoppel.

Memorandum Opinion dated November 8, 2001, at 3. Second, it held that:

Even had the Sixth Circuit not been so emphatic, Plaintiff's estoppel claim would be dismissed on similar legal grounds though different facts. The Policy is also clear and unambiguous as to the authority of an agent or broker to waive or alter the Policy. The Policy states at § 10.1 that "no one, including our agent, has the right to change or waive any part of the policy unless the change is approved in writing on the policy by one of our officers." This specific provision leaves Plaintiff no reasonable basis to believe that Botts had authority to amend the Policy provisions. To override the unambiguous provision by allowing Botts' purported oral modification would violate the rule in *Sprague.*

*Id.* at 3–4. The district court concluded as follows:

Considering the Sixth Circuit's conclusions in the underlying case, applying those findings to *Sprague* and also considering the Policy admonitions regarding waiver or change of Policy provisions, this Court concludes that Plaintiff may not maintain a promissory estoppel claim as a matter of law.

*Id.* at 4. The district court thereafter entered judgment in favor of Paul Revere.

McMurtry appeals.

## II.

We review the district court's grant of summary judgment de novo. *Owens Corning v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 257 F.3d 484, 490–91 (6th Cir.2001).

McMurtry contends that the district court erred in determining that the ERISA plan provisions regarding lifetime benefits are unambiguous and in granting summary judgment to Paul Revere on this basis. McMurtry counters that they are ambiguous, and he therefore should have been allowed to litigate his estoppel claim. He argues that ambiguity exists in the own occupation rider terms that determine when the rider expires. He also asserts that the policy schedule is ambiguous. He maintains that Paul Revere's own conduct illustrates the ambiguity in that Botts and a senior claims examiner both interpreted the policy to provide lifetime total disability benefits to him. Finally, he contends that ambiguity exists as a result of certain markings Botts made on the plan documents he provided to McMurtry. Botts apparently altered the definition of total disability in the base policy.

We need not, indeed cannot, reach McMurtry's arguments, because McMurtry's estoppel argument was fully and fairly litigated in the prior appeal. In our initial decision, we concluded that the plan at issue was clear and unambiguous and that McMurtry is not entitled to lifetime benefits. Indeed, we explicitly stated:

When the rider, with its modified definition of "total disability," expired upon the plaintiff's 65th birthday, the original definition of "total disability" was reinstated requiring the plaintiff to meet the

"original," stricter definition of "total disability." Such a provision is by no means uncommon in disability policies. *See, e.g., Heller v. Fortis Benefits, Ins. Co.,* 142 F.3d 487 (D.C.Cir.), *cert. denied,* 525 U.S. 930, 119 S.Ct. 337, 142 L.Ed.2d 278 (1998).

The original policy, which has never ceased to be a legally operative document, states that the benefits are payable in 30–day intervals, "subject to continuing proof of loss." This language plainly shows that an insured must meet the applicable definition of "total disability" every 30 days to continue receiving benefits. Under the definition of "total disability" in the original policy, unmodified by the now inoperative rider, an insured may not be "engaged in any other gainful occupation." It is not disputed that the plaintiff continues to work as a physician, and therefore is clearly engaged in a form of "gainful occupation." He is, therefore, not entitled to total disability benefits under the plain language of the policy. Thus, we reverse the district court's order granting benefits to the plaintiff beyond age 65.

*McMurtry,* 2000 WL799342, at *5–6. Because we concluded that the policy was plain and unambiguous, we necessarily decided, albeit implicitly, that McMurtry could not sustain an estoppel argument, given the rule of *Sprague. See Sprague,* 133 F.3d at 403–04.

Thus, the law of the case doctrine precluded the district court, and now prevents this Court, from entertaining McMurtry's estoppel arguments. As we noted in *Hanover Ins. Co. v. American Eng. Co.,* 105 F.3d 306, 312 (6th Cir.1997):

It is clear that when a case has been remanded by an appellate court, the trial court is bound to "proceed in accordance with the mandate and law of the

case as established by the appellate court." *Petition of U.S. Steel Corp.,* [479 F.2d] 489, 493 (6th Cir.), *cert. denied,* 414 U.S. 859[, 94 S.Ct. 71, 38 L.Ed.2d 110] (1973). The "law of the case" doctrine precludes a court from "reconsideration of identical issues." *Id.* "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." *Coal Resources,* 865 F.2d at 766 (citations omitted).

And while not an "inexorable command," *id.,* none of three reasons for reconsideration of the law of the case are applicable here. *See id.* (stating that a court may reconsider a ruling "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice").

In short, McMurtry's estoppel claim is precluded by the law of the case. The district court did not err in refusing to entertain the claim on remand.

Furthermore, the issue is also beyond the scope of our prior mandate, which was limited in scope:

Accordingly, the district court's judgment holding that the plaintiff's entitlement to lifetime benefits had "vested" is REVERSED; the award of attorney fees to the plaintiff is VACATED; and the case is remanded for a redetermination of the attorney-fees question in a manner consistent with this opinion.

*McMurtry,* 2000 WL 799342, at *8. Because our remand order was limited in scope, *see United States v. Campbell,* 168 F.3d 263, 265 (6th Cir.1999) (noting "[l]imited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which

the district court must operate"), the district court in this case properly considered only the attorney's fees question on remand. *See id.* (holding that "[t]he basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals"). *See generally id.* (observing that "[i]n essence, the mandate rule is a specific application of the law-of-the case doctrine"). Indeed, McMurtry acknowledged as much in his petition for rehearing of our decision in the prior appeal.

Given this outcome, we need not address McMurtry's arguments on the merits.

### III.

For foregoing reasons, the judgment of the district court is **AFFIRMED.**